IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BENJAMIN ORR WHITE, | ) | CIVIL NO. 12-00406 JMS-BMK |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING |
| | ) | DEFENDANTS' MOTIONS TO |
| vs. | ) | DISMISS; AND (2) DENYING |
| | ) | PLAINTIFF'S MOTION FOR |
| TIME WARNER CABLE INC., | ) | INVOLUNTARY JOINDER |
| OCEANIC TIME WARNER CABLE, | ) | |
| HEARST TELEVISION INC., KITV- | ) | |
| TV also known as HEARST | ) | |
| STATIONS INC., MR. ANDREW | ) | |
| JACKSON in his Professional capacity | ) | |
| as a General Manager of KITV-TV, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS; AND (2) DENYING PLAINTIFF'S MOTION FOR INVOLUNTARY JOINDER

## I. INTRODUCTION

Before the court are: (1) Defendants Hearst Television Inc. ("HTV"),

Hearst Stations Inc. (operator of KITV-TV), and KITV-TV General Manager

Andrew Jackson's (collectively, "TV Station Defendants") Motion to Dismiss

Plaintiff's Claims, Doc. No. 42; (2) Defendants Time Warner Cable Inc. ("TWC")

and Oceanic Time Warner Cable's ("Oceanic") (collectively, "Cable Defendants")

Motion to Dismiss Amended Complaint filed October 31, 2012, Doc. No. 45; and

(3) pro se Plaintiff Benjamin White's ("Plaintiff") Motion to Join Federal Communications Commission ("FCC") & State of Hawaii Department of Commerce and Consumer Affairs Cable Television Division ("DCCA") as Involuntary Plaintiffs ("Motion for Involuntary Joinder"), Doc. No. 87.  For the reasons discussed below, Defendants' Motions to Dismiss are GRANTED, and Plaintiff's Motion for Involuntary Joinder is DENIED.

## II.  BACKGROUND

On July 19, 2012, Plaintiff filed this action alleging various claims arising from a ten-day blackout period in July 2012 when Honolulu television station KITV was not carried by the Cable Defendants.  Doc. No. 1, Compl.  ¶¶ 8-14.  Plaintiff essentially claims that all Defendants failed to notify him, a consumer and cable subscriber, of a change in programming and failed to provide access to programs on KITV-TV, thereby violating his constitutional rights pursuant to the First and Ninth Amendments to the United States Constitution, various provisions of the Cable Television Consumer Protection and Competition Act of 1992 ("the Cable Act"), Chapter 113B of Title 18 United States Code, and Hawaii Administrative Rules, Chapter 16-131.  Plaintiff seeks statutory, compensatory and punitive damages, declaratory and injunctive relief, and an award of fees and costs.

On October 31, 2012, Plaintiff filed an Amended Complaint, Doc. No. 17, followed by a Second Amended Complaint ("SAC") on November 13, 2012. Doc. No. 25.  On November 29, 2012, the TV Defendants filed their Motion to Dismiss, Doc. No. 42, and the Cable Defendants filed their Motion to Dismiss on November 30, 2012.  Doc. No. 45.  Plaintiff filed a Combined Memorandum in Opposition to both Motions on January 28, 2013, Doc. No. 70, and both the Cable and TV Defendants filed Replies on February 11, 2013.  Doc. Nos. 73, 74.

After briefing was complete for the Motions to Dismiss, on February 25, 2013, Plaintiff filed the Motion for Involuntary Joinder, Doc. No. 87.  Because Plaintiff's Motion for Involuntary Joinder could impact Defendants' Motions to Dismiss, the court addresses both matters in this Order.

The court finds these matters suitable for disposition without a hearing pursuant to Local Rule 7.2(d).

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

Plaintiff is proceeding pro se; consequently, this court will liberally construe Plaintiff's pleadings.  *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants."  (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).).[1]

---

[1]  The Cable Defendants object to the filing of the SAC in violation of Federal Rule of Civil Procedure 15(a).  Nonetheless, because the Cable Defendants concede that the claims asserted against them in the SAC are essentially the same as in the Amended Complaint, and

(continued...)

# IV.  ANALYSIS

## A.  Motions to Dismiss

### 1.  *No Private Right of Action Exists for Plaintiff's Claims that Defendants Violated Federal Statutes*

#### a.  *Law regarding statutory interpretation*

A private right of action "to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  The court's task is to "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.*  Absent specific Congressional intent, no private right of action exists. *See id.*  ("[C]ourts may not create [a private cause of action], no matter how desirable that might be as a policy matter, or how compatible [it may be] with the statute.").  An individual's

> ability to bring a private right of action may be authorized by the explicit statutory text or, in some instances, may be implied from the statutory text. However, an implied right of action is only authorized when there is clear evidence Congress intended such a right to be part of the statute.

*Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010).  Thus, the first step in determining whether a statute authorizes a private right of action is an

---

[1](...continued)
because the TV Station Defendants move to dismiss the SAC (as opposed to the Amended Complaint), the court construes the SAC as the operative complaint.  *See Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1174 (E.D. Cal. 2011).

examination of the statutory language itself.  *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010); *see also Amer. Tel. & Tel. Co. v. M/V Cape Fear*, 967 F.2d 864, 866 (3d Cir. 1992) (noting that the "primary source of a private right of action is the text of a statute").  If the statute does not explicitly create a right of action, courts must then determine if one may be implied from "the statute's language, structure, context, and legislative history."  *Northstar*, 615 F.3d at 1115.[2]  If other analogous "provisions of the statute expressly provid[e] private causes of action," the absence of such express language in a specific provision implies "congressional intent not to create an implied cause of action."  *Id.* (internal quotations and modifications omitted).  Additionally, if "Congress designated a method of enforcement other than through private lawsuits," then the implication is that "Congress intended to preclude" a private right of action.  *Id.*

---

[2]  *Cort v. Ash*, 422 U.S. 66, 78 (1975), set forth a four-factor test to determine whether a statute implies a private right of action: whether (1) the plaintiff is "one of the class for whose especial benefit the statute was enacted;" (2) there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;" (3) it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff;" and (4) the "cause of action [is] one traditionally relegated to state law."  The Court later clarified that courts should not give each factor equal weight:

> The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort* -- the language and focus of the statute, its legislative history, and its purpose -- are ones traditionally relied upon in determining legislative intent.

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979).

(quoting *Sandoval*, 532 U.S. at 290).

> b.      *Plaintiff's claims pursuant to the Cable Act*

Plaintiff brings multiple claims against Defendants based on alleged

violations of the Cable Act, 47 U.S.C. §§ 521-609, specifically:

(1) Count I - violation of § 534[3] for failing to provide written notice to

KITV-TV and to himself, Doc. No. 25, SAC ¶¶ 31-34;

(2) Count II - violation of § 552[4] for failing to provide consumer

---

[3]  Count I is titled "Violation of Title 47 U.S.C. 534 SEC. 614, *et seq.*; Notification Failure."  Doc. No. 25, SAC at 12.  Congress amended Section 614 of the Communications Act of 1934 ("1934 Act") as Section 4 of the Cable Act, codified as 47 U.S.C. § 534.  Section 534 provides in part:

> Each cable operator shall carry, on the cable system of that
> operator, the signals of local commercial television stations and
> qualified low power stations as provided by this section. . . .
> . . . .
> A cable operator shall provide written notice to a local commercial
> television station at least 30 days prior to either deleting from carriage or
> repositioning that station. . . .

47 U.S.C. § 534(a), (b)(9).

[4]  Count II is titled "Violation of Title 47 U.S.C. 552 SEC. 632; Consumer Protection and Customer Service."  Doc. No. 25, SAC at 14.  Section 632 is from the 1934 Act, which is now Section 8 of the Cable Act and provides in part:

> The Commission shall, within 180 days of October 5, 1992,
> establish standards by which cable operators may fulfill their
> customer service requirements.  Such standards shall include, at a
> minimum, requirements governing--
> . . . .
> (2) installations, outages, and service calls; and
> (3) communications between the cable operator and the subscriber

(continued...)

protection and customer service to Plaintiff, Doc. No. 25, SAC ¶¶ 36-39;

(3) Count III - violation of § 521 Note (a)(1), (2), (3), (6) and (9),[5] by dropping KITV programming from cable coverage, thereby causing Plaintiff and other cable subscribers to be held hostage, possibly increasing one party's bargaining power in the negotiations among Defendants to resolve the underlying financial dispute, Doc. No. 25, SAC ¶¶ 41-44;

(4) Count V - violation of § 521[6] for failing to settle their financial dispute and removing KITV from cable coverage, Doc. No. 25, SAC ¶¶ 50-53; and

---

[4](...continued)
(including standards governing bills and refunds).

47 U.S.C. § 552(b)(2)-(3).

[5] Count III is titled "Violation of First Amendment Rights."  Doc. No. 25, SAC at 15. Whether Plaintiff is claiming a statutory violation of § 2 of the uncodified, legislative purpose of the Cable Act, 47 U.S.C. § 521 Note (a)(1), (2), (3), (6) and (9), or a First Amendment violation in Claim III is not entirely clear.  The court will therefore address both interpretations.

[6] Count V is titled "Violation Cable Television Consumer Protection and Competition Act of 1992."  Doc. No. 25, SAC at 18.  Plaintiff appears to be claiming that Defendants violated the legislative purpose specified by Congress in connection with its enactment of the Cable Act, found in the uncodified Note, which provides in part:

> It is the policy of the Congress in this Act to -- (1) promote the availability to the public of a diversity of views and information through cable television and other video distribution media; . . . (4) . . . ensure that consumer interests are protected in receipt of cable service; and (5) ensure that cable television operators do not have undue market power vis-à-vis video programmers and consumers.

47 U.S.C. § 521 Note (b)(1)-(5).

(5) Count VII - violation of § 533,[7] which mandates that rules and regulations prescribed under § 533(f)(1) not impose limitations which would impair the development of diverse and high quality video programming.  Doc. No. 25, SAC ¶¶ 61-62.

Because none of the Cable Act sections at issue expressly creates a private right of action, the court turns to whether a private right of action can be implied.

The court looks first at "the text and structure of the Cable Act."  *San Juan Cable LLC v. Puerto Rico Tel. Co.*, 612 F.3d 25, 30 (1st Cir. 2010).  A review of the Cable Act provides ample evidence that Congress did not envision private enforcement of the sections at issue.  For example, finding no implied private right of action in § 541(b)(1) of the Cable Act, the First Circuit stated that:

> The text of the Cable Act is replete with express private rights of action.  *See, e.g.* 47 U.S.C. §§ 551(f)(1), 553(c)(1), 554(g).  This circumstance reveals with conspicuous clarity that Congress knew how to provide for a private right of action when it deemed such a right appropriate.  Given Congress's persistent employment of express private rights of action in the Cable Act, it would

---

[7] Count VII is titled "Violation of Title 47 U.S.C. 533 SEC. 613, Ownership Restrictions."  Doc. No. 25, SAC at 21.  Section 613 of the 1934 Act is now Section 11 of the Cable Act, codified as 47 U.S.C. § 533, which provides in part: "(2) In prescribing rules and regulations under paragraph (1), the Commission shall, among other public interest objectives -- . . . (G) not impose limitations which would impair the development of diverse and high quality video programming."  47 U.S.C. § 533(f)(2)(G).

> be inconsistent to imply additional private rights of
> action.  The hoary maxim "expressio unius est exclusio
> alterius" comes readily to mind.

*Id.*  The court concluded that "[t]he inclusion of an express private right of action

in a statutory provision and the exclusion of similar language in a neighboring

provision gives rise to an inference that the exclusion was purposeful."  *Id.* at 30-

31.

Furthermore, Congress specifically authorized administrative

remedies, not a private cause of action, for violations of § 534 (Count I).  *See* 47

U.S.C. § 534(d) (providing remedies through the Commissioner of the FCC for

broadcast stations when cable operators fail to comply with this section); *see also*

*Adell Broad. Corp. v. Cablevision Indus.*, 854 F. Supp. 1280, 1289 (E.D. Mich.

1994) (holding that an administrative enforcement remedy under § 534 is

designated only for broadcast stations and therefore "no private cause of action to

enforce § 534(a) in U.S. District Court exists").

In Counts III and V, Plaintiff asserts violations of uncodified

legislative history or purpose, neither of which is law or can provide the basis for a

private claim for relief.  *See Van Wersch v. Dept. of Health & Human Servs.*, 197

F.3d 1144, 1152 (Fed. Cir. 1999) (noting that "legislative history is not

legislation").

Finally, the statutory provisions at issue in Counts II and VII, sections

522(b) and 533(f), merely direct the FCC to establish standards and/or rules and

regulations governing the cable industry.  These sections do not apply to any action

or inaction on the part of the TV Station Defendants or Cable Defendants.  In

addition, these provisions do not provide any basis for a claim for relief to an

individual cable customer.  *See Leach v. Mediacom*, 240 F. Supp. 2d 994, 997-98

(S.D. Iowa 2003) (finding no private right of action under Cable Act provision

requiring franchising authorities to prescribe rules and regulations related to cable

channels).

Counts I, II, III, V and VII are DISMISSED without leave to amend.

c.    *Plaintiff's claim pursuant to criminal terrorism statute*

In Count IV, Plaintiff alleges a violation of a criminal statute defining

domestic terrorism, 18 U.S.C. § 2331(5)(b)(i),[8] (Doc. No. 25, SAC ¶ 46).  Plaintiff

appears to claim that by allowing the blackout to occur without notice, Defendants

engaged in domestic terrorism, essentially holding Plaintiff and other cable

customers hostage during negotiations to resolve the financial dispute.  *Id.*

Plaintiff has no standing to enforce this federal criminal law, and

---

[8] Count IV is titled "Violations Title 18 U.S.C., Chapter 113B; Terrorism -- Corporate."
Doc. No. 25, SAC at 17.

therefore has no private right of action.  *See Linde v. Arab Bank*, 353 F. Supp. 2d 327, 331 (E.D.N.Y. 2004) (finding no private right of action under 18 U.S.C. § 2331 *et seq.*); *see also Rockefeller v. U.S. Court of Appeals Office, for the Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D. D.C. 2003) (noting no private right of action under federal criminal statutes).[9]

Count IV is DISMISSED without leave to amend.

**2.      *Plaintiff Fails to State a Constitutional Claim***

*a.      Plaintiff's claim pursuant to the First Amendment*

In Count III, Plaintiff alleges a general violation of his First Amendment rights during the negotiations to resolve financial disputes among the Defendants.  Doc. No. 25, SAC ¶ 43.  This claim, too, fails.

The First Amendment "prohibits *governmental* infringement" of rights.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) (emphasis added); *see also Belluso v. Turner Commc'ns Corp.*, 633 F.2d 393, 398 (5th Cir. 1980) (citing *Pub. Util. Comm'n v. Pollack*, 343 U.S. 451, 461 (1952)) ("The First Amendment is a restraint on Government, not on private persons."); *Merrell v. Renier*, 2006 WL 3337368, at *7 (W.D. Wash. Nov. 16, 2006) (noting that "the First

---

[9]  Liberally construed, perhaps Plaintiff seeks relief under 18 U.S.C. § 2333, providing a private cause of action for "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism . . . ."  Clearly, such a claim under the facts set forth in the SAC lacks any plausibility.

Amendment has no application" in a case where the plaintiff failed to allege any state action).  None of the Defendants is a governmental actor capable of violating the First Amendment.  *See Belluso*, 633 F.2d at 400 (stating that commercial "broadcasters are not instrumentalities or agents of the Government, but operate as private parties" not subject to Constitutional claims unless "the Government in fact was in some way involved in bringing about the alleged violation"); *see also Amsterdam v. KITV 4 Television Station*, 2010 WL 3489358, at *7 (D. Haw. Aug. 31, 2010) (dismissing First Amendment claim because "KITV 4 is not owned by a state or political subdivision, and . . . . [a]s such, there is no state action for which Plaintiff has shown a cause of action against KITV 4 under the First Amendment").

Count III is DISMISSED without leave to amend.

b.    *Plaintiff's claim pursuant to the Ninth Amendment*

In Count VI, Plaintiff alleges that all Defendants violated his right to be an informed voter in violation of the Ninth Amendment.  Doc. No. 25, SAC ¶¶ 55-59.[10]

The Ninth Amendment to the United States Constitution provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to

_____

[10]  During the blackout, the Cable Defendants did not carry KITV-TV and therefore, did not air a debate among candidates for the Second Congressional District on July 12, 2012.  Doc. No. 25, SAC ¶ 22.

deny or disparage others retained by the people."  It does not provide a right to vote in a federal election, *see Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665 (1966) (noting that "the right to vote in federal elections is conferred by Art. I, § 2" of the U.S. Constitution), let alone a right to be an informed voter in a federal election.  Moreover, the Ninth Amendment "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation."  *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991).

Count VI is DISMISSED without leave to amend.

**3.**    ***No Private Right of Action Exists for Plaintiff's Claims that Defendants Violated State Statutes and Rules***

In Count VIII, Plaintiff alleges that the Cable Defendants violated Hawaii Administrative Rules ("HAR") § 16-131-16 by not issuing him a refund for the temporary removal of KITV-TV from Oceanic's network during the blackout period, not issuing a report regarding the dispute with the TV Station Defendants, and not providing him with thirty days notice that the dispute would lead to an interruption of service.  Doc. No. 25, SAC ¶¶ 64-67.  Plaintiff further alleges that Hawaii Revised Statutes ("HRS") § 440G-9(c) specifies that the Cable Defendants may be fined for each day of interrupted service and that he is entitled to collect such fines. *Id.* ¶¶ 68-69.  Plaintiff is mistaken.  There is no private right of action

14

under either HRS § 440G or HAR Ch. 16-131.

To determine whether a private right of action exists under Hawaii statutory or regulatory law, the court must determine whether the state legislature intended to create a private cause of action. *See Alakai Na Keiki, Inc. v. Matayoshi*, 127 Haw. 263, 285, 277 P.3d 988, 1010 (2012) (applying the same principles of statutory interpretation under federal law). *Alakai Na Keiki* set forth three factors to guide this inquiry:

> First, whether the plaintiff is one of the class for whose especial benefit the statute was enacted; . . . that is, does the statute create a . . . right in favor of the plaintiff. Second, . . . whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one.  Third, whether it [is] consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

*Id.* (internal quotations, citations and brackets omitted).

HRS Chapter 440G is known as the Hawaii Cable Communications Systems Law ("State Cable Law").  HRS § 440G-1.  This law governs the cable franchise industry; authorizes the director of the DCCA to adopt rules and regulations; and bestows full authority for the resolution of all complaints arising from this law, and rules promulgated pursuant to this law, to the director of the DCCA.  HRS § 440G-12.  HAR Ch. 16-131 contains rules adopted by the DCCA director pursuant to HRS § 440G.  Plaintiff bases his claim on violations of HAR

15

§§ 16-131-16,[11] 16-131-24,[12] and 16-131-62.[13]  These three rules -- detailing terms and conditions for cable franchisees -- do not expressly create a private right of action in federal court for a cable subscriber.

Further, application of the *Alakai Na Keiki* factors clearly indicates that neither HRS § 440G nor the rules at issue implies a private right of action. First, the State Cable Law does not create a right in favor of Plaintiff.  The State Cable Law was enacted to facilitate "rapid and orderly expansion of cable

---

[11]  HAR § 16-131-16 provides in part:

> In the event the subscriber's service is interrupted other than by the negligence or willful act of the subscriber and remains out of order for twenty-four hours or longer after being reported to be out of order, appropriate adjustments or refunds shall be made to the subscriber.

[12]  HAR § 16-131-24 provides:

> In the event of a dispute between a subscriber and the cable operator respecting any bill, charge, or service, the cable operator shall immediately make an investigation and report the result thereof to the subscriber.  In the event the matter cannot be satisfactorily adjusted, the subscriber may request an investigation and determination from the director.

[13]  HAR § 16-131-62 provides in part:

> (a)  The cable operator shall give the director and subscribers thirty days notice before . . . (3) [c]hanging the program offerings when the suppliers of cable programming provide adequate notice to the cable operator.  (b)  When the thirty-day notice of interruption in cable services or changes in program offerings cannot be given, the cable operator shall provide as much prior notice as the circumstances will allow.

television systems" generally benefitting "people throughout the State of Hawaii."

HRS § 440G-2 (1985) (repealed 1987).  *See also* Haw. House Journal, Conf.

Comm. Rep. No. 23, at 1261 (1970) (stating that the "purpose of this bill is to

"establish a comprehensive framework for the licensing and regulation of cable

television systems").  The law was created for the benefit of the general population

of Hawaii and the emerging cable television industry as a whole, not for any

particular person or class of people.

Secondly, the legislature found "that the regulatory power over cable

television companies should be vested in the director of regulatory agencies."

HRS § 440G-2 (1985) (repealed 1987).  From the outset, the legislature explicitly

charged the DCCA director with administration and enforcement of the State Cable

Law, and rules promulgated pursuant to it.  *See* Haw. House Journal, Conf. Comm.

Rep. No. 23, at 1261 (1970) ("The bill empowers the Director of [what is now the

DCCA] to . . . administer and enforce the [law]."  Thus, remedies for violations of

these rules are set forth in HRS § 440G-9, which directs subscribers to submit

complaints to the director, who has sole authority to resolve those complaints.  *See*

HRS § 440G-9(a) ("Subscriber complaints regarding the operation of a cable

system may be made . . . to the director."); HRS § 440G-9(b) (setting forth grounds

for which cable franchise may be revoked, altered, or suspended by the director);

and HRS § 440G-9(c) (director may fine a cable operator for each violation under subsection (b)).

Finally, implying a private right of action to Plaintiff would be inconsistent with the underlying regulatory purpose and clearly contrary to the legislative intent to grant administrative remedies for violations of the State Cable Law.

Count VIII is DISMISSED without leave to amend.

## B.   Neither the FCC Nor the State of Hawaii DCCA Can Be Joined as Involuntary Plaintiffs

By separate motion, Plaintiff seeks an order to join the FCC and the DCCA as involuntary plaintiffs pursuant to Federal Rule of Civil Procedure 19(a)(2).  Doc. No. 87, Motion for Involuntary Joinder.  Because neither can properly be joined as involuntary plaintiffs, the motion is DENIED.

Rule 19(a)(2) states that "[i]f a person has not been joined as required, the court must order that the person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff."  This rule has its origins in a patent case, *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459 (1926), and has been applied almost exclusively in patent and copyright infringement cases.

And application of the doctrine, in any setting, is clearly limited.

18

"[T]he authorization in Rule 19(a) to join a party as an involuntary plaintiff may be invoked only when the party sought to be joined has a duty to allow plaintiff to use his name in the action." *Caprio v. Wilson*, 513 F.2d 837, 839 (9th Cir. 1975) (citing 7 Wright & Miller, Federal Practice & Procedure, § 1606). Thus, *Caprio* held that the United States Post Office could not be joined as a plaintiff in a case involving allegations of the wrongful use of franking privileges by a United States Congressman where "no trust relationship exists between appellant and the Post Office." *Id.* at 840. *See also Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273, 1287 n.5 (9th Cir. 1979) (finding that attorney general, who owes a general duty to protect the interests of all citizens and not just the named plaintiffs, cannot be made an involuntary plaintiff).

Clearly, neither the FCC nor the DCCA owe any direct duty to Plaintiff. At most, they owe a general duty of loyalty to the citizens of the United States (for the FCC) and the citizens of the State of Hawaii (for the DCCA). But the trust relationship between one individual (Plaintiff) and these entities is far too remote to require joinder under Rule 19(a)(2). Further, granting such a request would clearly undermine the discretionary authority granted to the executive branch of government whether to file a lawsuit or commence an administrative action. To compel these governmental entities to participate in Plaintiff's lawsuit

19

is well beyond Rule 19(a)(2)'s intended and permissible scope.

## V.  <u>CONCLUSION</u>

Defendants' Motions to Dismiss are GRANTED and Plaintiff's Counts I, II, III, IV, V, VI, VII, and VIII are DISMISSED without leave to amend. Additionally, Plaintiff's Motion to Join the FCC and DCCA as Involuntary Plaintiffs is DENIED.

The court is largely convinced that any amendment to the SAC would be futile.  But, because the threshold of futility is low, and the court will not scour the entire Cable Act to determine if any plausible private cause of action may be brought, the court will afford Plaintiff an opportunity to file a Third Amended Complaint ("TAC") by March 29, 2013.  Failure to file a TAC by that date will result in the entry of judgment against Plaintiff.

Further, it appears that there is no diversity jurisdiction in this matter. And under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction [.]"  Although premature to decide, given the age of this case it is highly unlikely that the court would exercise supplemental jurisdiction over wholly state law claims.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 (1988)) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'").

To be clear, all claims in the SAC are dismissed without leave to amend as to those claims.  But Plaintiff is provided one further opportunity to amend his complaint, if possible, with claims that provide him a private cause of action and over which this court has jurisdiction.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 28, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*White v. Time Warner Cable, Inc., et al.,* Civ. No. 12-00406 JMS-BMK, Order (1) Granting Defendants' Motions to Dismiss; and (2) Denying Plaintiff's Motion for Involuntary Joinder